**Judy Danelle Snyder, OSB No. 732834**
E-mail: judy@jdsnyder.com
**Holly Lloyd, OSB No. 942979**
E-mail: holly@jdsnyder.com
LAW OFFICES OF JUDY SNYDER
1000 S.W. Broadway, Suite 2400
Portland, OR 97205
Telephone: (503) 228-5027
Facsimile: (503) 241-2249

Of Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **WESTERLUND LOG HANDLERS, LLC,** a Washington limited liability company; **DAVID WESTERLUND**; and **ROGER NANCE**,<br><br>Plaintiffs,<br><br>v.<br><br>**MICHAEL J. ESLER, KIM T. BUCKLEY** and **ESLER, STEPHENS & BUCKLEY, LLP,** an Oregon limited liability partnership,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** (Negligence - Legal Malpractice, Breach of Fiduciary Duty)<br><br>Amount in controversy: $30,000,000<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Westerlund Log Handlers, LLC, David Westerlund and Roger Nance, allege:

## PARTIES

1.

Plaintiff Westerlund Log Handlers, LLC, ("WLH"), is a state of Washington limited liability company registered to do business in Oregon.  WLH's principal place of business is at #10 Pier 1, Suite 301, Astoria, Oregon.

PAGE 1 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)

2.

Plaintiff David Westerlund ("Westerlund") is a resident of the state of Washington.  Westerlund is the Managing Member and sixty-percent owner of WLH.

3.

Plaintiff Roger Nance ("Nance") is a resident of the state of Washington.  Nance is a member and forty-percent owner of WLH.

4.

Defendant Michael J. Esler ("Esler") is an attorney licensed to practice law in the state of Oregon.

5.

Defendant Kim T. Buckley ("Buckley") is an attorney licensed to practice law in the state of Oregon.

6.

Defendant Esler, Stephens & Buckley LLP ("ES&B") is an Oregon limited liability partnership composed of Michael J. Esler, John W. Stephens and Kim T. Buckley.  ES&B's principal place of business is at 121 SW Morrison Street, Suite 700, Portland, Oregon.  ES&B is in the business of providing legal services to individuals and businesses.

## JURISDICTION AND VENUE

7.

This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).  Plaintiffs are residents of, or established in, the state of Washington.  Defendants are residents of, or established in, the state of Oregon.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.

Venue is proper in this jurisdiction under 28 U.S.C. §1391(b) because one or more of the defendants reside in this judicial district, and the events giving rise to plaintiffs' claims occurred in this judicial district.

//

//

PAGE 2 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)

## GENERAL ALLEGATIONS

9.

At all material times, WLH was in the business of procuring, buying, sorting, grading, scaling, tagging, debarking, decking, storing and delivering to dockside, and selling logs for export (the "Log Handling business").  WLH's assets included goodwill, tools and equipment, business relationships with timber owners, leases on property near Astoria, Oregon for the storage and processing of logs, and leases with the Port of Astoria for the purposes of segregating, sorting, loading and shipping logs owned by its customers ("WLH Assets").

10.

Upon information and belief, defendants Esler and Buckley, individually or through ES&B, collectively referred to as "the Attorneys", have represented the following clients: (1)  Murphy Overseas U.S.A. Holdings, LLC ("MOH"), an Oregon limited liability company; (2) Murphy Overseas U.S.A. Timber and Land Development, LLC ("TLD"), an Oregon limited liability company; (3) Murphy Overseas USA Astoria Forest Products LLC ("AFP"), an Oregon limited liability company (all three entities are collectively referred to as "the Murphy Group"); and, (4) Dennis J. Murphy ("Murphy"), an Oregon resident.

11.

Murphy controls the operations of MOH, TLD and AFP, which have their principal places of business at 52319 SW Westgate Drive, #239, Portland, Oregon.  Murphy is the manager of  MOH.  MOH is the manager of TLD.  TLD is the manager of AFP.

12.

In 2013, WLH was under contract to provide log handling services exclusively to China National Building Materials Import and Export Corporation ("CNBM").  In November and December of 2013, Westerlund and Nance met on several occasions with Murphy, the Murphy Group agents and with Esler.

13.

During the course of the meetings, Murphy and the Murphy Group agents reviewed WLH's financials, tax returns and profit and loss statements, as well as WLH's agreements with CNBM.  Esler was

PAGE 3 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)

present during some of the meetings which resulted in a verbal agreement between Murphy, individually and on behalf of the Murphy Group, and Westerlund and Nance, individually and on behalf of WLH, as to the primary terms of a partnership (the "Partnership") in AFP which they would jointly own and operate when WLH was disentangled from CNBM.  Murphy told Westerlund and Nance that the Murphy Group first wanted CNBM out of the picture and that Murphy Group would pay for the litigation to accomplish that objective.

14.

 WLH, Westerland and Nance were not advised that they should seek independent legal representation.  Westerlund and Nance relied on Esler, Buckley and ES&B as their attorneys for all matters which were for the benefit of their Partnership.

15.

Murphy Group agreed to bring capital to the Partnership and WLH, Westerlund and Nance agreed to contribute their knowledge and business relations in the purchase and sale of logs and WLH's assets, including their equipment and the leases for the piers.   It was further agreed that Westerlund and Nance would jointly receive a 30% ownership in the Partnership along with monthly distributions of $21,000 and $16,000 respectively.

16.

Esler advised Murphy Group and WLH to continue to work as separate entities until the resolution of the dispute with CNBM.  Esler was concerned that if CNBM learned of the joint venture in AFP, CNBM would pursue legal claims against Murphy Group and/or AFP.  Thus, Westerlund and Nance agreed, individually and on behalf of WLH, that until the resolution of the CNBM litigation and the merger of WLH into AFP, WLH would perform log handling services in the guise of an independent contractor for AFP.

17.

Esler, Buckley and/or members of ES&B (the "Attorneys")  prepared the documents to establish AFP and prepared the agreements between AFP and WLH, Westerlund and Nance.  WLH, Westerlund and Nance relied on the legal advice and documents prepared by the Attorneys.  WLH, Westerlund and

PAGE 4 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)

Nance believed the Attorneys were working on their behalf to establish the Partnership in AFP for the future operation of the business of buying, handling, processing, inventorying and exporting logs from Piers 1 and 3 in Astoria.

18.

The Attorneys failed to advise WLH, Westerlund and Nance that the Attorneys were operating solely to protect the interests of the Murphy Group and that WLH, Westerlund and Nance should seek independent legal advice or counsel. The Attorneys also failed to advise WLH, Westerlund and Nance that there was a conflict of interest between the Attorneys professional relationship with the Murphy Group and the legal advice and services they provided on behalf of the Partnership. The Attorneys also failed to advise WLH, Westerlund and Nance that the advice and instructions they provided to WLH, Westerlund and Nance was for the benefit of the Murphy Group and against the business interests of WLH, Westerlund and Nance.

19.

On January 17, 2014, Esler filed with the Office of the Oregon Secretary of State, the Articles of Organization for Murphy Overseas USA Astoria Forest Products, LLC. The Articles listed Murphy Overseas USA Timber and Land Development, LLC, as the owner and member of AFP. Esler was identified as the organizer and the address for ES&B at 888 SW Fifth Avenue, Suite 700, Portland, Oregon was listed as the address for the organizer.

20.

The Attorneys drafted a Log Handling Agreement (the "Agreement") for the services WLH was to provide for AFP. The Agreement was signed on January 13, 2014. The Agreement provided that AFP would pay WLH $107 per thousand board feet (MBF) for logs purchased by AFP. Consistent with the oral agreement between the Murphy Group and WLH, Westerlund and Nance, AFP also agreed to pay WLH 30% of the net profits realized by AFP upon the sale of the logs and within ten days of the receipt of payment by AFP.

PAGE 5 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)

21.

The Agreement acknowledged that WLH was in a unique position to provide access to the Port of Astoria facilities as a result of the long-term leases WLH held for Piers 1 and 3.  At the time of the execution of the Agreement, WLH had the right to lease the Piers for an additional twelve years.  These leases provided WLH with the exclusive right to export logs in the area as Astoria had the only deep-water port on the northwest coast of Oregon.

22.

The Agreement required WLH, Westerlund and Nance to use their best efforts to add AFP as an additional lessee for Piers 1 and 3 and to permit AFP to continue the leases in the event of a default by WLH.  Without these leases or a joint venture with WLH, the Murphy Group could not export its logs in the area.

23.

The Agreement was structured to favor AFP and to disfavor the interests of WLH, Westerlund and Nance in the following particulars:

A.      it made Westerlund and Nance personal guarantors of the obligations of WLH;

B.      AFP was free to terminate the Agreement at any time or for any reason;

C.      WLH was required to provide written notice of nonpayment to AFP by certified mail *and* by mail to each of the last known addresses of the principals and principal office of AFP, *and then* wait 60 days before a default could be declared;

D.      AFP could avoid a default if it sought arbitration of any disputed amount owing, in which event WLH would have to wait another 30 days after a final decision by an arbitrator.  Thus, WLH was obligated to provide services to AFP under the Agreement and could not terminate those services even though WLH was not being paid by AFP until several months had elapsed and the default process exhausted; and

E.      if AFP "deems itself insecure", AFP had the right to enter WLH's premises and use WLH's equipment and employees.

PAGE 6 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)

24.

Prior to the execution of the Agreement, Esler and Murphy Group's CFO Ed Morrissey instructed WLH, Westerlund and Nance to terminate the relationship with CNBM.  After the Agreement was signed, Nance drafted, and representatives of the Murphy Group proofed, the January 15, 2014, a letter of termination sent to CNBM.  Two days later, CNBM responded, notifying WLH, Westerlund and Nance that they were in default under the CNBM agreement.  On that same day, Esler contacted Portland attorney Gordon Carey, with whom Esler had a reciprocal referral relationship, and asked him to represent WLH, Westerlund and Nance in the filing of a lawsuit against CNBM for breach of contract and rescission/reformation.  Esler met with and sent documents to Mr. Carey on behalf of WLH, Westerlund and Nance, to provide information on the dispute with CNBM.  Esler assisted in the drafting of the Complaint on behalf of WLH, Westerlund and Nance against CNBM and others which was filed on January 31, 2014, in the Circuit Court of the State of Oregon for the County of Clatsop, Case No. 14CV00618.

25.

While Mr. Carey represented WLH, Westerlund and Nance in the CNBM litigation, Esler also communicated directly with the attorneys representing CNBM in the litigation.  Esler reviewed Mr. Carey's bills for the services provided to WLH, Westerlund and Nance.  The Murphy Group and/or AFP paid Mr. Carey's attorney's fees and costs.  Thus, the Attorneys, the Murphy Group and AFP became aware of attorney-client confidential communications between Mr. Carey and WLH, Westerlund and Nance.

26.

WLH, Westerlund and Nance were not asked to pay Mr. Carey's attorney fees or case costs nor were they consulted on who would be hired to represent them in the dispute with CNBM.  WLH, Westerlund and Nance accepted this arrangement as it was consistent with their agreement that Murphy would fund the litigation against CNBM to clear the way for the formalization of their Partnership in AFP.

27.

On January 31, 2014, the Attorneys prepared a Co-Tenancy Agreement between WLH and AFP, which, without any consideration, assigned to AFP all the rights WLH had under the Port leases, but

PAGE 7 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)

continued to impose on WLH the obligation to pay rent to the Port.  WLH, Westerlund and Nance cooperated as they believed these were actions being taken toward the formation of the Partnership.

28.

On February 11, 2014, Esler wrote Mr. Carey and falsely represented that WLH did not have the money to pay its bills, that AFP had been paying WLH for log handling fees in advance, and that AFP had to pay WLH's stevedore bill of approximately $255,000.00.

29.

In February of 2014,  Esler contacted Portland attorney Richard Miller of the firm of Cosgrave Vergeer Kester, LLP and solicited Mr. Miller to become involved in the representation of WLH.  Esler advised Mr. Miller that Murphy Group would pay his fees.   Esler directed Mr. Miller on the main terms of a proposal to be presented to CNBM and which permitted WLH to continue to work with the Murphy Group and AFP while the litigation was pending.  WLH, Westerlund and Nance believed that the  Attorneys had retained Mr. Carey and Mr. Miller to assist them in the litigation and negotiations with CNBM as part of their agreement with the Murphy Group for formation of the Partnership in AFP.

30.

Mr. Miller and Mr. Carey communicated via email with their clients WLH, Westerlund and Nance. WLH, Westerlund and Nance were then unaware that the Attorneys, the Murphy Group and AFP were accessing Mr. Miller and Mr. Carey's confidential attorney-client communications with WLH, Westerlund and Nance.

31.

In February and March of 2014, Westerlund and Nance received $21,000 and $16,000 respectively from AFP.  These payments were consistent with the verbal agreement they had made with Murphy and the Murphy Group in December of 2013, regarding the Partnership in AFP.

32.

To circumvent the CNBM claim, the Attorneys created Westerlund Workout, LLC, into which AFP and/or Murphy Group deposited money to pay for WLH's operations.  Esler falsely represented to third

PAGE 8 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)

parties, including CNBM, that WLH did not have the money to pay its bills, that AFP had been paying WLH in advance for log handling fees, and that AFP had to pay WLH's stevedore bill of approximately $255,000.00.

33.

On March 6, 2014, WLH entered into a Security Agreement with AFP to secure WLH's performance of the Log Handlers Agreement. The Security Agreement was prepared by the Attorneys. It granted AFP a security interest in WLH's equipment, in the leases with the Port of Astoria for Piers 1 and 3, and the industrial site lease for the land where it maintained its operations. WLH, Westerlund and Nance cooperated and signed the Security Agreement as they believed these were actions being taken toward the formation of the Partnership.

34.

On March 9, 2014, Esler filed a Complaint for Declaratory Judgment on behalf of Murphy Overseas USA Astoria Forest Products, LLC, against CNBM, WLH, Westerlund and Nance, in the Circuit Court of the State of Oregon for the County of Clatsop, Case No. 14CV01829. The complaint sought a declaration that AFP owed nothing to CNBM and that AFP was not an account debtor of WLH. Mr. Carey then moved to consolidate this case with the earlier case he had filed on behalf of WLH, Westerlund and Nance against CNBM in furtherance of the strategy developed by Esler to release WLH from any obligations to CNBM and to protect WLH's assets for the Partnership. Mr. Miller and Mr. Carey collaborated with the Attorneys in the CNBM litigation. WLH, Westerlund and Nance cooperated in the litigation as they were led to believe this strategy was necessary to accomplish the formation of the Partnership.

35.

By March of 2014, AFP had taken control over WLH's operation and its books and financial operations and was using all of WLH's equipment and proprietary and confidential software known as the CT3 Log Management System. Despite requests from WLH, Murphy Group would not release the funds AFP owed to WLH under the Log Handling Agreement so WLH could pay its employees and maintain the equipment it used to perform log handling services. To third parties, Esler asserted that WLH did not have

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
Fax (503) 241-2249

the funds it needed to make payroll and to pay critical vendors.  WLH, Westerlund and Nance cooperated as they believed these were actions being taken toward the formation of the Partnership.

36.

AFP contacted WLH's log vendors to change the agreements with WLH so that the logs were sold directly to AFP, and not to WLH.  AFP changed WLH's payroll service and made its Chief Operations Officer and its bookkeeper employees of AFP.  WLH, Westerlund and Nance cooperated as they believed these were actions being taken toward the formation of the Partnership.

37.

In March of 2014, AFP entered into a Co-Tenancy Agreement with WLH.  Esler contacted the Port of Astoria and negotiated the Port's consent to AFP being a co-tenant on WLH's lease with the right to replace WLH in the event it defaulted on the lease.  WLH, Westerlund and Nance cooperated as they believed these were actions being taken toward the formation of the Partnership.

38.

On April 1, 2014, Westerlund was told by AFP personnel that Esler had recommended that Westerlund add AFP as a legal owner to the titles of WLH's vehicles and equipment to delay the foreclosure of those assets by CNBM.  WLH, Westerlund and Nance cooperated as they believed these were actions being taken toward the formation of the Partnership.

39.

Esler instructed Westerlund, through AFP personnel, to default on the Port leases so that AFP could take over the leases.  In reliance on Esler's instructions, WLH did not make the lease payment to the Port.   WLH had never previously missed a payment to the Port.  WLH, Westerlund and Nance cooperated as they believed these were actions being taken toward the formation of the Partnership.

40.

The Attorneys drafted a letter for Westerlund to sign to notify the Port of Astoria that WLH was acknowledging default on the leases and waiving the 10-day grace period to cure the default.  Relying on the strategy developed by the Attorneys, on April 4, 2014, Westerlund sent the letter to the Port of Astoria

PAGE 10 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)

which acknowledged WLH's non-payment of the Port's invoice in the amount of $14,858.50 and waived the 10 day grace period to cure the default on the leases.  This action permitted AFP to completely take over the leases with the Port as the co-tenant and to eliminate any interest of WLH in the Port leases. WLH, Westerlund and Nance cooperated as they believed these were actions being taken toward the formation of the Partnership.

41.

In April of 2014, Westerlund and Nance believed the Attorneys and AFP were working to maintain WLH's assets, log handling and export operations until the dispute with CNBM was resolved at which time WLH, Westerlund and Nance would become partners in the AFP joint venture.  Murphy Group's managers repeatedly told Westerlund that Murphy would keep his word and that they just had to maintain an arms length relationship until the CNBM dispute was resolved, at which time WLH, Westerlund and Nance's joint venture in AFP would occur.

42.

On April 7, 2014, the Port of Astoria contacted AFP to request that it rectify the default by WLH, pay the $14,858.50 and assume the responsibility of a direct lease for Piers 1 and 3.  On April 8, 2014, AFP paid the balance due on the rent and assumed the leases for Piers 1 and 3.

43.

In April of  2014, all of WLH's employees were converted to AFP employees and WLH leased all of it's equipment to AFP.  As of April 16, 2014, all of WLH's personnel, equipment and assets were in the possession of AFP.  Westerlund and Nance continued to believe that this was a strategy developed by Esler to protect their valuable interests in the log handling and export business until the conclusion of the CNBM litigation.  WLH, Westerlund and Nance cooperated as they believed these were actions being taken toward the formation of the Partnership.

44.

In May of 2014,  Murphy Overseas USA Astoria Forest Products LLC was joined by CNBM as a third party defendant in the lawsuit WLH, Westerlund and Nance had initiated against CNBM.  CNBM

PAGE 11 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)

asserted a claim against AFP for intentional interference with contract, citing the undisclosed joint venture between WLH and AFP which was apparent to CNBM. Thereafter, Murphy Group continued to pay the attorneys' fees and costs incurred by WLH, Westerlund and Nance in the CNBM litigation.

45.

Throughout the CNBM litigation, WLH, Westerlund and Nance believed that the strategy developed by the Attorneys would lead to the formation of the Partnership with the Murphy Group. WLH, Westerlund and Nance relied on the legal advice and documents prepared by the Attorneys. WLH, Westerlund and Nance believed the Attorneys were working for their benefit to establish the Partnership in AFP for the future operation of the business of buying, handling, processing, inventorying and exporting logs from Piers 1 and 3 in Astoria.

46.

Throughout the CNBM litigation, the Murphy Group continued to pay Mr. Carey's fees and costs to represent WLH, Westerlund and Nance in the litigation.

47.

In November of 2014, the dispute with CNBM was resolved. AFP paid the funds to settle CNBM's claims against all parties, including WLH, Westerlund and Nance. Nevertheless, the Partnership upon which they had agreed with the Murphy Group in December of 2013 was never formalized.

48.

On December 16, 2014, Buckley sent a letter to Mr. Carey and Mr. Miller informing them that Westerlund and Nance were to no longer access any of AFP's business operations, the log yard, the office or the Piers or any of the property WLH had previously owned. Westerlund and Nance were given until the close of business of December 19, 2014, to remove their furniture, papers, and personal property from the office. AFP asserted that any further appearances by Westerlund or Nance at the AFP facilities would constitute trespassing.

49.

It was not until late July of 2014, while Westerlund and Nance were preparing for a hearing in the

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
Fax (503) 241-2249

CNBM litigation, that they began to develop an awareness that there was a potential conflict between their interests and that of the Murphy Group.  Prior to late July of 2014, Westerlund and Nance were unaware that, as a result of their reliance on the advice of and the strategy developed by the Attorneys, WLH, Westerlund and Nance were at risk of losing their interests in the assets of WLH and in the Partnership.

50.

WLH, Westerlund and Nance followed the advice of Esler, Buckley and ES&B throughout all relevant periods of time.  In late July of 2014 that WLH, Westerlund and Nance began to suspect the Attorneys were not acting to protect their interests in the Partnership with the Murphy Group and that the advice and instructions they were given by the Attorneys was not in furtherance of a Partnership, but was for the benefit of the Murphy Group.  This knowledge could not have been discovered through the exercise of reasonable care at an earlier point in time as a result of the failure of the Attorneys to advise them of the risks and of their conflict of interest arising from their representation of the Murphy Group as described in Paragraph 17 above. Thus, this action for damages has been timely pursued within the two year statute of limitations for claims for damages as a result of professional negligence.

51.

In March of 2015, Murphy filed a complaint against David Westerlund and Lori Westerlund in the United States District court for the District of Oregon,  Case No. 3:15-cv-1072.  In that litigation, Murphy is seeking to recover damages alleged owed.

52.

On July 13, 2015,  AFP filed a complaint against WLH,  Westerlund and Nance in the Circuit Court of the State of Oregon for the County of Clatsop, Case No. 15CV18174.  The Complaint was prepared by the Attorneys and signed by Buckley.  In that litigation, AFP is seeking an award of $5,527,424 in damages, plus its attorney fees and expenses, for alleged breaches of the January 13, 2014, Log Handlers Agreement.

53.

WLH,  Westerlund and Nance's economic damages for the log handling fees AFP owes WLH, for

PAGE 13 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)

the 30% of net profits to be paid to WLH, loss of their business, the loss of their lease in real property, the loss of their leases with the Port of Astoria for Piers 1 and 3, the loss of the use of their equipment and proprietary software, the loss of their incomes and profits from AFP, the loss of their employees and contracts with log suppliers, and the attorneys fees and costs they are incurring in defending the above-described litigation initiated by AFP and Murphy are not yet capable of being determined but may exceed $30,000,000.00

## FIRST CLAIM FOR RELIEF

### (Negligence - Legal Malpractice)

54.

Plaintiffs reallege and incorporate the allegations of paragraphs 1 through 53.

55.

On information and belief, defendants Esler, Buckley and ES&B have had a long-standing and profitable relationship representing Murphy and the Murphy Group.  Commencing in January of 2014, defendants began providing legal advice to and preparing documents for WLH, Westerlund and Nance. Defendant continued to work in collaboration with WLH, Westerlund and Nance until the conclusion of the CNBM litigation in November of 2014.

56.

Defendants represented WLH, Westerlund and Nance even though they had a non-waivable conflict of interest.  Defendants failed to disclose the material conflicts inherent in this joint representation to WLH, Westerlund and Nance and took no steps to obtain a conflict waiver.

57.

An attorney of ordinary skill and diligence would have determined whether the interests of WLH, Westerlund and Nance were aligned or conflicted with the interests of Murphy and the Murphy Group before jointly representing the parties.  An attorney of ordinary skill and diligence would have evaluated whether this was a waivable conflict and, if so, obtained a written waiver of the conflict.  An attorney of ordinary skill and diligence would have advised WLH, Westerlund and Nance that defendants had a non-

PAGE 14 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)

waivable conflict of interest and that WLH, Westerlund and Nance needed to obtain independent counsel.

58.

Defendants were negligent in one or more of the following particulars:

a.    in failing to recognize the conflict of interest which prevented them from providing independent and reliable advice to WLH, Westerlund and Nance whose interests were adverse to Murphy and the Murphy Group; or, in the alternative;

b.    in recognizing but failing to disclose to WLH, Westerlund and Nance the conflict of interest which prevented them from providing independent advice to WLH, Westerlund and Nance when their interests were adverse to Murphy and the Murphy Group;

c.    in failing to advise WLH, Westerlund and Nance to obtain independent legal representation in their business relationship with Murphy and the Murphy Group;

d.    in failing to obtain written consent from WLH, Westerlund and Nance to prepare documents regarding their business relationship with the Murphy Group and AFP;

e.    in failing to advise WLH, Westerlund and Nance of the legal implications of the documents they prepared to transfer the assets of WLH, Westerlund and Nance to AFP; and

f.    in providing WLH, Westerlund and Nance with legal services and advice which resulted in the loss of their business, the loss of their lease in real property, the loss of their leases with the Port of Astoria for Piers 1 and 3, the loss of the use of their equipment and proprietary software, the loss of their incomes and profits from AFP, the loss of their employees and contracts with log suppliers, and which resulted in them becoming embroiled in litigation which had forced them to incur attorneys' fees and costs.

59.

Defendants' negligence has damaged plaintiffs in an amount which exceeds $30,000,000.00 as it resulted in the loss of WLH, Westerlund and Nance's business interests, the loss of their lease in real property, the loss of their leases with the Port of Astoria for Piers 1 and 3, the loss of the use of their equipment and proprietary software, the loss of their incomes and profits from AFP, the loss of their

PAGE 15 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)

employees and contracts with log suppliers, and has resulted in litigation with Murphy Overseas USA Astoria Forest Products, LLC and caused plaintiffs' to incur attorneys' fees and costs in an amount yet to be determined.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

60.

Plaintiffs reallege and incorporate the allegations of paragraphs 1 through 59.

61.

As legal counsel to WLH, Westerlund and Nance, defendants had a fiduciary duty to conduct themselves in good faith and to act in the best interests of their clients.

62.

Defendants breached their fiduciary duties by taking on the representation of WLH, Westerlund and Nance even though they had a non-waivable conflict of interest, failing to disclose that interest and failing to act in the best interests of WLH, Westerlund and Nance.   Defendants took improper advantage of their superior legal knowledge and positions, failed to exercise undivided loyalty to WLH, Westerlund and Nance, and concealed important facts from and deceived WLH, Westerlund and Nance.

63.

Defendants breach of their fiduciary duties has damaged plaintiffs' in an amount which exceeds $30,000,000.00 as it resulted in the loss of  WLH, Westerlund and Nance's business interests, the loss of their lease in real property, the loss of their leases with the Port of Astoria for Piers 1 and 3, the loss of the use of their equipment and proprietary software, the loss of their incomes and profits from AFP, the loss of their employees and contracts with log suppliers, and has resulted in litigation with Murphy Overseas USA Astoria Forest Products, LLC and caused plaintiffs' to incur attorneys' fees and costs in an amount yet to be determined.

//

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
Fax (503) 241-2249

## DEMAND FOR A JURY TRIAL

64.

Plaintiffs demand a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs Westerlund Log Handlers, LLC, David Westerlund and Roger Nance seek judgment against defendants as follows:

1.    For plaintiffs' economic damages in the amount of $30,000,000.00, or such other amount to be proven at trial, plus prejudgment interest at the rate of 9% per annum;

2.    For plaintiffs' costs and prevailing party fees; and

3.    For such other relief as the Court deems just and proper.

DATED this  25th  day of May, 2016.

LAW OFFICES OF JUDY SNYDER

 s/ Judy Danelle Snyder
JUDY DANELLE SNYDER, OSB No. 732834
HOLLY LLOYD, OSB No. 942979
Telephone: (503) 228–5027
Facsimile: (503) 241-2249
Email: judy@jdsnyder.com
Email: holly@jdsnyder.com
Of Attorneys for Plaintiff

PAGE 17 - COMPLAINT (Negligence - Legal Malpractice; Breach of Fiduciary Duty)