IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAVID WESTERLUND**, **ROGER NANCE**, and **WESTERLUND LOG HANDLERS LLC**,<br><br>        Plaintiffs,<br><br>        v.<br><br>**MURPHY OVERSEAS USA ASTORIA FOREST PRODUCTS LLC**, **MURPHY OVERSEAS USA TIMBER AND LAND DEVELOPMENT LLC**, **MURPHY OVERSEAS USA HOLDINGS LLC**, and **DENNIS J. MURPHY**,<br><br>        Defendants. | Case No. 3:15-cv-1296-SI (LEAD)<br><br>(Consolidated with Case Nos. 3:15-cv-1072-SI and 3:15-cv-1459-SI)<br><br>**OPINION AND ORDER ON MOTION TO COMPEL** |
| **WESTERLUND LOG HANDLERS LLC**, **DAVID WESTERLUND**, and **ROGER NANCE**<br><br>        Plaintiffs,<br><br>        v.<br><br>**MICHAEL J. ESLER**, **KIM T. BUCKLEY**, and **ESLER STEPHENS & BUCKLEY LLP**,<br><br>        Defendants. | Case No. 3:16-cv-922-SI<br><br>**OPINION AND ORDER ON MOTION TO QUASH** |

PAGE 1 – OPINION AND ORDER

David P. Morrison, COSGRAVE VERGEER KESTER LLP, 888 S.W. Fifth Avenue, Suite 500, Portland, OR 97204. Of Attorneys for Plaintiffs David Westerlund, Roger Nance, and Westerlund Log Handlers LLC in Case No. 3:15-cv-1296-SI.

Judy Danelle Snyder and Holly Lloyd, LAW OFFICES OF JUDY SNYDER, 1000 S.W. Broadway, Suite 2400, Portland, OR 97205. Of Attorneys for Plaintiffs David Westerlund, Roger Nance, and Westerlund Log Handlers LLC in Case No. 3:16-cv-922-SI.

Michael E. Haglund and Michael K. Kelley, HAGLUND KELLEY LLP, 200 S.W. Market Street, Suite 1777, Portland, OR 97201. Of Attorneys for Defendants Murphy Overseas USA Astoria Forest Products LLC, Murphy Overseas USA Timber and Land Development LLC, Murphy Overseas USA Holdings LLC, and Dennis J. Murphy in Case No. 3:15-cv-1296-SI.

Gordon L. Welborn, Matthew J. Kalmanson, and Jason R. Poss, HART WAGNER LLP, 1000 S.W. Broadway, Twentieth Floor, Portland, OR 97205. Of Attorneys for Defendants Michael J. Esler, Kim T. Buckley, and Esler Stephens & Buckley LLP in Case No. 3:16-cv-922-SI.

**Michael H. Simon, District Judge.**

In four related lawsuits, two discovery motions are pending before the Court. Three of these actions have been consolidated and are collectively referred to as "the '1296 case."[1] The Plaintiffs in the lead action in the '1296 case are David Westerlund ("Westerlund"), Roger Nance ("Nance"), and Westerlund Log Handlers LLC ("WLH"). They are collectively referred to as "the Westerlund Parties." The Defendants in the lead action are Murphy Overseas USA Astoria Forest Products LLC ("AFP"), Murphy Overseas USA Timber and Land Development LLC, Murphy Overseas USA Holding LLC, and Dennis J. Murphy ("Murphy"). They are collectively referred to as "the Murphy Parties."[2] In the '1296 case, the Murphy Parties have filed a motion to compel ("Motion to Compel").[3]

---

[1] The three consolidated actions are Case No. 3:15-cv-1296-SI (LEAD), Case No. 3:15-cv-1459-SI, and Case No. 3:15-cv-1072-SI.

[2] In Case No. 3:15-cv-1459-SI, the plaintiff is AFP, and the defendants are the Westerlund Parties. In Case No. 3:15-cv-1072-SI, the plaintiff is Dennis J. Murphy, and the defendants are David Westerlund and Lori Westerlund.

[3] Case No. 15-cv-1296-SI (ECF 48) (Motion to Compel).

PAGE 2 – OPINION AND ORDER

The fourth action, which has not been consolidated with the '1296 case, is a legal malpractice lawsuit, and it is referred to as "the Malpractice case."[4] The Westerlund Parties are the plaintiffs in the Malpractice case. The defendants in the Malpractice case are attorney Michael J. Esler ("Esler"), attorney Kim T. Buckley, and their law firm Esler, Stephens & Buckley LLP. These defendants are collectively referred to as the "Esler Defendants." In the Malpractice case, the Esler Defendants served subpoenas *duces tecum* on attorney Gordon T. Carey ("Carey"), attorney Richard W. Miller ("Miller"), and the law firm in which Miller is a partner, Cosgrave Vergeer Kester LLP ("Cosgrave Law Firm"). The Cosgrave Law Firm also represents the Westerlund Parties in the '1296 case. In the Malpractice case, the Westerlund Parties are represented by different counsel (attorney Judy Snyder) than the counsel who represents them in the '1296 case, the Cosgrave Law Firm. In the Malpractice case, the Westerlund Parties have filed a motion to quash the three subpoenas *duces tecum* served by the Esler Defendants ("Motion to Quash").[5]

Both the Motion to Compel in the '1296 case and the Motion to Quash in the Malpractice case involve many common facts and several common questions of law and mixed questions of law and fact concerning the application of the attorney-client privilege under Oregon law. On October 19, 2016, the Court held a joint hearing on these two related motions. At that hearing, the Court announced its tentative ruling, but gave the parties an opportunity to submit additional evidence and briefing. For the reasons that follow, both the Motion to Compel filed by the Murphy Parties in the '1296 case and the Motion to Quash filed by the Westerlund Parties in the Malpractice case are granted in part and denied in part.

---

[4] The Malpractice case is Case No. 3:16-cv-922-SI.

[5] Case No. 3:16-cv-922-SI (ECF 19) (Motion to Quash).

PAGE 3 – OPINION AND ORDER

## BACKGROUND

**A. Preliminary Statement**

The following recitation of factual background comes exclusively from statements made by the Westerlund Parties in the pending litigation, either directly by one or more of them (in the form of deposition testimony or declaration) or by their attorneys (in the form of pleadings, correspondence, or statements made at the joint hearing). In resolving the pending motions the Court relies upon the following nine documents: (1) Second Amended Complaint filed in the '1296 case ("SAC");[6] (2) Complaint filed in the Malpractice case ("Malpractice Compl.");[7] (3) Contract dated January 13, 2014 between the Westerlund Parties and AFP (one of the Murphy Parties) ("Contract");[8] (4) Excerpts from the Deposition of David Westerlund taken on December 9, 2015 ("D. Westerlund Dep. 12/9/15");[9] (5) Letter to the Oregon Professional Liability Fund dated December 18, 2015 signed by attorney Judy Synder on behalf of the Westerlund Parties ("Snyder Letter");[10] (6) Excerpts from the Deposition of Roger A. Nance, Jr. taken on August 24, 2016 ("R. Nance Dep. 8/24/16");[11] (7) Excerpts from the Deposition of David Westerlund taken on August 25, 2016 ("D. Westerlund Dep. 8/25/16");[12] (8) Declaration

---

[6] Case No. 15-cv-1296-SI (ECF 51).

[7] Case No. 15-cv-922-SI (ECF 1); *see also* Case No. 15-cv-1296-SI (ECF 49-4) (Haglund Decl., Ex. D) (same document).

[8] Case No. 15-cv-1296-SI (ECF 49-1) (Haglund Decl., Ex. A).

[9] Case No. 15-cv-1296-SI (ECF 49-2) (Haglund Decl., Ex. B).

[10] Case No. 15-cv-1296-SI (ECF 49-3) (Haglund Decl., Ex. C).

[11] Case No. 15-cv-1296-SI (ECF 49-5) (Haglund Decl., Ex. E).

[12] Case No. 15-cv-1296-SI (ECF 49-6) (Haglund Decl., Ex. F).

of David Westerlund dated November 2, 2016 filed in the '1296 case ("D. Westerlund Decl.");[13] and (9) Transcript of Proceedings on October 19, 2016, in the joint hearing held on the two pending motions ("Hearing Tr.").[14]

The Court recognizes that many of the statements made by David Westerlund, Roger Nance, or WLH, either directly or through their counsel, are disputed by the Murphy Parties, the Esler Parties, or both. At this time, the Court makes no findings regarding any of these factual disputes. The statements made by the Westerlund Parties are recited in this Opinion and Order and relied upon by the Court solely for the purpose of resolving the attorney-client privilege issues raised by the Westerlund Parties in their opposition to the Motion to Compel in the '1296 case and in support of their Motion to Quash in the Malpractice case.

As will be shown below, the factual representations made by the Westerlund Parties, if accepted, are sufficient to preclude the Westerlund Parties from using the attorney-client privilege to prevent discovery by the Murphy Parties of the communications that are the subject of the Motion to Compel in the '1296 case. In addition, the factual representations of the Westerlund Parties, if accepted, demonstrate the applicability of an exception to the attorney-client privilege sufficient to warrant the denial of the Westerlund Parties' Motion to Quash in the Malpractice case. As discussed more fully below, it would be unfair and unjust to allow the Westerlund Parties to rely upon those factual representations to support their claims in the four pending cases but then to ignore the representations in deciding the pending motions. The Court is merely precluding the Westerlund Parties from taking a position regarding the relevant facts as they may apply in the pending motions that is contrary to the factual positions that they have

---

[13] Case No. 15-cv-1296-SI (ECF 63).

[14] Case No. 15-cv-1296-SI (ECF 60); Case No. 15-cv-922-SI (ECF 31) (same).

PAGE 5 – OPINION AND ORDER

taken earlier in these same proceedings, including in both pleadings and deposition testimony by the Westerlund Parties. After accepting the version of the "facts" asserted by the Westerlund Parties, the Court concludes that the pending motions should be resolved against the Westerlund Parties. Thus, there is no need at this time to resolve any factual disputes.

**B. Factual Background According to the Westerlund Parties**

1. WLH is a limited liability company owned by Westerlund and Nance. WLH was in the log business and engaged in procuring, buying, sorting, grading, scaling, tagging, debarking, decking, storing and delivering to dockside, and selling logs for export. WLH's assets included leases with the Port of Astoria.[15]

2. In 2013, WLH was under an exclusive contract to buy and sell logs and provide log handling services with only China National Building Materials Import and Export Corporation ("CNBM").[16]

3. In November and December 2013, Murphy met with Westerlund and Nance several times, and on December 31, 2013 the Murphy Parties and the Westerlund Parties verbally entered into a joint venture partnership (the "Partnership").[17]

4. A dispute arose between WLH and CNBM.[18]

5. AFP is a limited liability company in the business of purchasing logs and reselling them on the international market. Murphy controls the operations of AFP and the other Murphy Parties.[19]

---

[15] SAC, ¶¶ 1-3, 10.

[16] SAC, ¶¶ 1-3, 10, 13; Malpractice Compl. ¶ 12.

[17] SAC, ¶ 14; Malpractice Compl. ¶ 13; Hearing Tr. at 20:11-12; 26:23-27-11.

[18] SAC, ¶ 18.

PAGE 6 – OPINION AND ORDER

6. On January 13, 2014, the Westerlund Parties entered into a Log Handling Agreement with AFP (the "Contract"). According to the Westerlund Parties, the Contract was intended to govern the parties' relationship until the dispute with CNBM was resolved; the Murphy Parties drafted the Contract to create an "appearance of an arms-length transaction," even though the parties were, in fact, already working together "as partners"; and the parties agreed that after WLH was "disentangeled" from CNBM, the Westerlund Parties and the Murphy Parties would "formalize" their joint ownership of AFP.[20]

7. On January 15, 2014, after the Contract was signed, the Westerlund Parties sent a letter to CNBM terminating the CNBM contract.[21]

8. On January 17, 2014, attorney Esler contacted attorney Carey and asked Carey to represent WLH, Westerlund, and Nance by filing a lawsuit against CNBM, alleging breach of contract and other claims. That lawsuit was filed in Clapsop County Circuit Court on January 31, 2014 ("the CNBM Lawsuit").[22]

9. The Westerlund Parties contend that Westerlund and Nance agreed, individually and on behalf of WLH, that until the resolution of the CNBM Lawsuit and the formal merger of WLH into AFP, WLH would perform log handling services "in the guise of an independent contractor" for AFT.[23]

---

[19] SAC, ¶¶ 4, 7, 11.

[20] Malpractice Compl. ¶ 13; SAC, ¶ 18 ("[The Murphy Parties] drafted this agreement [the Contract] to create an appearance of an arms-length transaction even though the parties were, in fact, working together as partners."); Contract; Malpractice Compl. ¶ 43 ("[T]he Partnership upon which they had agreed with the Murphy [Parties] in December of 2013 was never formalized.").

[21] Malpractice Compl. ¶ 24.

[22] Malpractice Compl. ¶ 24.

[23] Malpractice Compl. ¶ 16.

PAGE 7 – OPINION AND ORDER

10. In February 2014, attorney Esler contacted attorney Miller of the Cosgrave Law Firm.[24]

11. According to the Westerlund Parties, in reliance on Murphy's alleged promises and representations and "in furtherance of the Partnership," WLH terminated its contract with CNBM. AFP and Murphy then hired and paid for lawyers [Carey and Miller] to represent the Westerlund Parties in the CNBM Lawsuit. In that action, CNBM filed counterclaims and asserted, among other things, that any payments from the Murphy Parties to the Westerlund Parties were subject to a right of attachment by CNBM. In "furtherance of the Partnership" and in order to avoid the risk of further litigation with CNBM, the Murphy Parties took over control of WLH, including its business, goodwill, employees, leases, tools and equipment, and accounts receivables and payables.[25]

12. Both Westerlund and Nance considered Esler to be the lead attorney for the Partnership.[26]

13. Both Westerlund and Nance considered both Carey and Miller to be part of the team of lawyers representing the Partnership acting under the direction of Esler. When Westerlund was asked at his deposition whether Esler hired Carey and Miller "to broaden the team of lawyers representing the joint venture," Westerlund answered, "That's exactly what I thought."[27]

---

[24] Malpractice Compl. ¶ 29.

[25] SAC, ¶ 15.

[26] Snyder Letter, p. 2; D. Westerlund Dep. 8/25/16 Tr. 2:4-25; R. Nance Dep. 8/24/16 Tr. 7:4-19; 49:14-23; 50:14-51:1; 55:4-19; 56:5-10; *see also* D. Westerlund Dep. 12/9/15 Tr. 59:12-60:10.

[27] D. Westerlund Dep. 8/25/16 Tr. 2:4-25. R. Nance Dep. 8/24/16 Tr. 49:14-23; 50:14-51:1; 55:4-19; 56:5-10.

14. In furtherance of the Partnership, both Westerlund and Nance provided personal services and expended money to assist in the operations of both WLH and AFP.[28]

15. In November 2014, the Westerlund Parties and the Murphy Parties resolved the dispute with CNBM.[29]

16. According to the Westerlund Parties, the Partnership between the Westerlund Parties and the Murphy Parties was in existence from December 31, 2013 through December 11, 2014.[30]

17. According to Westerlund, "[o]n or shortly before December 11, 2014, I learned that the Murphy Parties would not continue their partnership with the Westerlund Parties, which I understood to be a termination of the partnership. From that point forward, the Murphy Parties and the Westerlund Parties stopped acting as partners and began acting as adversaries."[31]

18. The Westerlund Parties contend that during the existence of the Partnership from December 31, 2013 through December 11, 2014, the Westerlund Parties engaged in the following activities in furtherance of the Partnership: (a) they cancelled the agreement with CNBM; (b) they transferred WLH Assets to AFP; (c) they provided WLH employees and resources; (d) they made AFP a co-tenant on leases with the Port of Astoria; (e) they defaulted on the leases with the Port of Astoria so that AFP would become the sole lessee; (f) they assigned the lease of a log yard to AFP; (g) they allowed the Murphy Parties to use WLH's

---

[28] SAC, ¶¶ 20, 16.

[29] SAC, ¶ 21.

[30] SAC, ¶ 14; Malpractice Compl. ¶ 13; Hearing Tr. at 20:11-12; 26:23-27-11; D. Westerlund Decl. ¶ 2.

[31] D. Westerlund Decl. ¶ 2.

PAGE 9 – OPINION AND ORDER

proprietary and confidential software; and (h) they assisted in the joint operations of AFP and WLH.[32]

## DISCUSSION

### A.  Preclusion of Inconsistent Positions

As explained in a leading treatise on Federal Practice and Procedure,

> Inconsistent positions in *successive litigation* are regulated by rules that increasingly are referred to as "judicial estoppel," although somewhat less confusion might be engendered by the more descriptive reference to the preclusion of inconsistent positions.

18B Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 4477 at 549 ("Preclusion of Inconsistent Positions—Judicial Estoppel") (2002) (emphasis added) (footnote omitted).[33] In the context of the pending motions, there is no successive litigation. Thus, the principle of judicial estoppel, strictly speaking, does not apply. Further, in a single action, "[i]nconsistent pleading is so well accepted that there is little need to remark that judicial estoppel does not forbid." *Id* at 607 (footnote omitted); *see also* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

As recognized by the Ninth Circuit, however, there may be times *even in a single lawsuit* when it is instructive to consider the policy underlying the doctrine of judicial estoppel, such as when a litigant may be "playing fast and loose with the courts." In *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267 (9th Cir. 1996), the Ninth Circuit explained:

> [W]e are troubled by the inconsistent positions Bradley takes with regard to the adequacy of her work performance. *Although we will not invoke the doctrine of judicial estoppel because Bradley takes*

---

[32] SAC, ¶ 23.

[33] *See also Hampton Tree Farms, Inc. v. Jewett*, 320 Or. 599, 609-11 (1995) (holding that judicial estoppel precludes a party from taking a position in a case that is contrary to a position successfully taken by that party in an earlier proceeding).

PAGE 10 – OPINION AND ORDER

> *her inconsistent positions in the same litigation, we believe the policy underlying the doctrine is instructive.* Judicial estoppel, also known as the doctrine of preclusion of inconsistent positions, "is intended to protect against a litigant playing fast and loose with the courts," gaining an advantage by taking one position, then seeking to gain a second advantage by taking an incompatible position. *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600-01 (9th Cir.1996) (*quoting Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990), *cert. denied*, 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991)). The underlying policy is to protect the dignity of the judicial process. *Id.* at 601.

*Bradley*, 104 F.3d at 271-72 (emphasis added) (footnote omitted); *see also Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) ("This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings'") (citation omitted) (brackets in original); *Hampton Tree Farms*, 320 Or. at 609 ("The purpose of judicial estoppel is to protect the judiciary, as an institution, from the perversion of judicial machinery.") (quotation marks and citation omitted).

Similarly, in *McNemar v. Disney Store, Inc.*, 91 F.3d 610 (3d Cir. 1996), *abrogation on other grounds recognized by Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773 (3rd Cir. 2001),[34] Judge Aldisert, writing for the Court, stated:

> [J]udicial estoppel is an equitable doctrine, invoked by a court in its discretion (1) to preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts in assuming inconsistent positions, and (2) with a recognition that each case must be decided upon its own particular facts and circumstances.

*McNemar*, 91 F.3d at 617. As Judge Aldisert further clarified:

---

[34] *See also Cleveland v. Policy Mgmt. Systems Corp.*, 526 U.S. 795 (1999) (holding that claims for social security disability insurance benefits and for damages under the Americans with Disabilities Act do not necessarily conflict).

PAGE 11 – OPINION AND ORDER

>Nothing grants a person the authority to flout the exalted status that the law accords statements made under oath or penalty of perjury. Nothing permits one to undermine the integrity of the judicial system by playing fast and loose with the courts by asserting inconsistent positions.

*Id.* at 620 (quotation marks and citation omitted).

Because the pending motions do not arise in the context of successive litigation, the Court does not rely upon the doctrine of judicial estoppel and will not preclude the Westerlund Parties from asserting whatever factual positions they may choose to assert at trial. The Court will, however, consider their sworn deposition testimony and declarations and the pleadings, correspondence, and statements of their litigation counsel in the pending cases when deciding the two discovery motions at issue. To allow the Westerlund Parties to say one thing in their sworn statements about the role of attorneys Carey and Miller and an entirely different thing in the pending discovery motions would "undermine the integrity of the judicial system by playing fast and loose with the courts by asserting inconsistent positions."

## B. Oregon's Law of Attorney-Client Privilege

In both the '1296 case and the Malpractice case, subject matter jurisdiction is based on diversity of citizenship, and Oregon state law provides the relevant rules of decision in both cases. Thus, Oregon state law applies to questions of attorney-client privilege. *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995); *see also* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").

Oregon's law of attorney-client privilege is codified primarily at Or. Rev. Stat. § 40.225, which is Rule 503 of the Oregon Evidence Code ("OEC"). The portions of Rule 503 that are most relevant to the issues before the Court are:

PAGE 12 – OPINION AND ORDER

1.  "Client means a person, public officer, corporation, *association or other organization or entity*, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer."[35]

2.  "Confidential communication means a communication not intended to be disclosed to *third persons* other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."[36]

3.  "A client has a privilege to refuse to disclose and to prevent any other person from disclosing *confidential communications* made for the purpose of facilitating the rendition of professional legal services to the client . . . ."[37]

4.  "There is no privilege under this section: . . . (c) As to a communication relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer[.]"[38]

## C. Murphy Parties' Motion to Compel

In their Motion to Compel, the Murphy Parties ask the Court to order the Westerlund Parties "to waive the attorney-client privilege in connection with their refusal to answer relevant questions in their August 24 and 25 depositions and to require their attorneys [Carey and Miller] to waive the same privilege concerning matters relevant to this litigation in connection with their

---

[35] OEC, Rule 503(1)(a) (emphasis added).

[36] OEC, Rule 503(1)(b) (emphasis added).

[37] OEC, Rule 503(2) (emphasis added).

[38] OEC, Rule 503(4)(c).

PAGE 13 – OPINION AND ORDER

upcoming depositions."[39] The Murphy Plaintiffs argue that such an order is appropriate under the "implied waiver" doctrine (also known as the "at issue waiver" doctrine) under the attorney-client privilege. The Westerlund Parties respond that such a doctrine has not yet been recognized under Oregon law and, even if it were, the conditions for its application have not been satisfied. The Court, however, views the issues differently than both the Murphy Parties and the Westerlund Parties. During the joint hearing held on October 19, 2016, the Court explained its tentative ruling to the parties and afforded all parties the opportunity to respond, as well as to submit supplemental evidence and legal argument after the hearing. The Westerlund Parties filed both a post-hearing brief and an additional declaration of Westerlund.[40]

It is a fundamental principle of attorney-client privilege in the context of a partnership, where the partnership often communicates with its legal counsel through one or more of its members, that an individual partner may obtain access to otherwise privileged communications between an attorney representing the partnership and *another partner* concerning partnership matters. As explained in a leading treatise on attorney-client privilege:

> In the association and partnership contexts, both the individual members or general partners and their respective entities are perceived as being the "client" relative to confidential communications between those who personify the entities and their legal counsel. Therefore, unlike the shareholders in the corporate context, the individual partners do not have to "establish 'cause' to discover privileged communications of an attorney in matters in which the partnership of which they are members is the client."

---

[39] Motion to Compel at 2.

[40] Case No. 15-cv-1296-SI (ECF 64 and ECF 65).

PAGE 14 – OPINION AND ORDER

1 PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 4:48 at 642-43 (2015) (quoting *Abbott v. Equity Group*, 1988 WL 86826, *1 (E.D. La. 1988)).[41]

As discussed by the Court during the October 19 hearing, the Westerlund Parties contend that they were in a joint venture Partnership with the Murphy Parties from December 31, 2013 through December 11, 2014. The Westerlund Parties further contend that Esler was the lead attorney for the Partnership and that he brought in both Carey and Miller to "broaden the team of lawyers representing the joint venture" Partnership. The Westerlund Parties also contend that they engaged in the following activities in furtherance of the Partnership: (a) they cancelled the agreement with CNBM; (b) they transferred WLH Assets to AFP; (c) they provided WLH employees and resources; (d) they made AFP a co-tenant on leases with the Port of Astoria; (e) they defaulted on the leases with the Port of Astoria so that AFP would become the sole lessee; (f) they assigned the lease of a log yard to AFP; (g) they allowed the Murphy Parties to use WLH's proprietary and confidential software; and (h) they assisted in the joint operations of AFP and WLH.

At least according to the Westerlund Parties, all legal work performed by Carey, Miller, and the Cosgrave Law Firm up through December 11, 2014, relating to any of these activities including the CNBM Lawsuit, was work done for the Partnership in which the Murphy Parties were partners along with the Westerlund Parties.[42] Thus, no communications between Carey,

---

[41] Relatedly, under Oregon law, "[e]ach partner is an agent of the partnership for the purpose of its business." Or. Rev. Stat. § 67.090.

[42] With their response to the Motion to Compel, the Westerlund Parties provide a letter from Miller of the Cosgrave Law Firm to Esler dated May 30, 2014. Case No. 15-cv-1296-SI (ECF 55 at 3). In that letter, Miller states that the Cosgrave Law Firm represents WLH related to its dispute with CNBM and in connection with WLH's activities with AFP. Miller adds that his law firm's client is WLH and "our firm's obligations are to Westerlund alone." *Id*. Although Miller's letter may represent his understanding of the relevant attorney-client relationship and might support a factual finding that Miller and his law firm were not in fact counsel for the

PAGE 15 – OPINION AND ORDER

Miller, or the Cosgrave Law Firm and any of the Westerlund Parties through December 11, 2014, relating to any of these activities, broadly construed, may be withheld from the Murphy Parties. To that extent, the Motion to Compel filed by the Murphy Parties is granted.

In their post-hearing brief, the Westerlund Parties argue,

> The Court's analysis does not lead to the conclusion that communications made after the partnership dissolved were not intended to be kept confidential from the Murphy Parties. Thus, the Court's order should not require the Westerlund Parties or their counsel to divulge any communications between and among them after they learned that Murphy was no longer willing to proceed with the partnership and decided to make claims against the Murphy Parties.

ECF 61 at 4. The Court agrees with the Westerlund Parties on this point.

The Westerlund Parties also argue:

> [T]he Court's analysis does not lead to the conclusion that all communications, on all topics, among and between the Westerlund Parties, Carey, and Miller are not privileged. Instead, as the Court expressly noted, it is only those communications regarding "partnership business" that were not intended to be kept confidential. The Court's analysis does not support a finding that the Westerlund Parties did not have an expectation of confidentiality with respect to other communications, and certainly not with respect to communications relating solely to the Westerlund Parties' unique interests separate and apart from the interests of the partnership. The Court's order should be limited accordingly.

*Id*. at 5. In theory, the Westerlund Parties are not wrong.

---

alleged Partnership, it is inconsistent with the representations made by the Westerlund Parties in the four pending actions. Because the Westerlund Parties have alleged the existence of a Partnership between the Westerlund Parties and the Murphy Parties for which Esler was the lead attorney and gave directions to Carey, Miller, and the Cosgrave Law Firm, who also were representing the Partnership, the Court accepts the representations by the Westerlund Parties for purposes of the two pending discovery motions. As noted above, any other ruling would be both unfair to the Murphy Parties and the Esler Defendants and could result in misrepresentations to the Court being advanced by the Westerlund Parties. Thus, the Court accepts the representations of the Westerlund Parties and will base its evidentiary rulings in the pending discovery motions on the presumed accuracy of the representations by the Westerlund Parties.

PAGE 16 – OPINION AND ORDER

In light of the extensive breadth and scope, however, of the Westerlund Parties' assertion of the activities of the Partnership from December 31, 2013 through December 11, 2014, it appears unlikely that there were extensive communications between the Murphy Parties and Carey, Miller, or the Cosgrave Law Firm during this period that were not related to the Partnership's business, broadly construed. Further, such an exclusion, if allowed without Court supervision, has the potential to be abused. Thus, if any documents dated before December 12, 2014, are withheld by the Westerlund Parties or by Carey, Miller, or the Cosgrave Law Firm under a claim of separate privilege, the Westerlund Parties shall supply to the Murphy Parties and to the Court a comprehensive privilege log and shall also provide to the Court a copy of all documents being withheld under such a claim of separate privilege for the Court's *in camera* inspection.[43]

### D. Westerlund Parties' Motion to Quash the Esler Defendants' Subpoenas *Duces Tecum*

In their Motion to Quash, the Westerlund Parties argue that the subpoenas issued to Carey, Miller, and the Cosgrave Law Firm should be quashed because the "subpoenas require the disclosure of attorney-client privileged and work product protected information."[44] The subpoenas seeks production of the following documents:

> Any and all documents and ESI relating to your representation of Westerlund Log Handlers, LLC; David Westerlund; and/or Roger Nance from the date the representation commenced through November 10, 2014. This request includes, but is not limited to, your entire client file, all work product, all billing statements, all correspondence with the aforementioned entity and individuals and their employees and agents, and all correspondence with third parties. This request excludes any work product or attorney-client

---

[43] Assertions of attorney-client privilege regarding communications before December 12, 2014 that are made during a deposition will need to be handled in a similar fashion with putative responses prepared and submitted to the Court for *in camera* review.

[44] Motion to Quash at 2.

PAGE 17 – OPINION AND ORDER

> communications created for the purpose of the above-captioned litigation and the [three lawsuits consolidated into the '1296 case].

Case No. 16-cv-922-SI (ECF 27) at 9.

The Esler Defendants deny that they ever represented any of the Westerlund Parties and argue that the subpoenaed communication are "vital" to the Esler Defendants' ability to defend the Malpractice case. *Id*. In the alternative, the Esler Defendants argue that if Esler, Carey, and Miller "were part of the same legal team representing the joint venture, then the subpoenaed communications are not privileged because they are 'relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer.' OEC 503(4)(c)." *Id*. The Court agrees with the Esler Defendants on the latter argument and thus need not resolve the former.

In the Malpractice case, the Westerlund Parties allege that the Esler Defendants

> failed to advise WLH, Westerlund and Nance that the Attorneys were operating solely to protect the interests of the Murphy Group and that WLH, Westerlund and Nance should seek independent legal advice or counsel. The Attorneys also failed to advise WLH, Westerlund and Nance that there was a conflict of interest between the Attorneys professional relationship with the Murphy Group and the legal advice and services they provided on behalf of the Partnership. The Attorneys also failed to advise WLH, Westerlund and Nance that the advice and instructions they provided to WLH, Westerlund and Nance was for the benefit of the Murphy Group and against the business interests of WLH, Westerlund and Nance.

Malpractice Compl. ¶ 18. As discussed earlier in connection with the Motion to Compel filed by the Murphy Parties, the Westerlund Parties take the position that they were in a Partnership with the Murphy Parties and that Esler, Carey, Miller, and the Cosgrave Law Firm were legal counsel for the Partnership. The Court concludes that the communications sought under the three subpoenas *duces tecum*, to the extent that they relate to the business of the Partnership, broadly construed, seek communications relevant to an issue of the alleged breach of duty by the Esler

Defendants allegedly owed to the Westerlund Parties. To that extent, the Motion to Quash by the Westerlund Parties is denied.

The Court recognizes, however, that the Westerlund Parties may assert there are some communications through November 10, 2014 (the last date sought by the Esler Defendants) that have nothing to do with the business of the alleged Partnership and thus are not relevant to the breach of duty alleged in the Malpractice case. The Court will handle all such claims, if any, in a manner similar to the way they are being handled in connection with the Motion to Compel filed by the Murphy Parties. Thus, if any documents dated through November 10, 2014, are withheld by the Westerlund Parties or by Carey, Miller, or the Cosgrave Law Firm under a claim of separate privilege, the Westerlund Parties shall supply to the Esler Defendants and to the Court a comprehensive privilege log and shall also provide to the Court a copy of all documents being withheld under such a claim of separate privilege for the Court's *in camera* inspection.

## CONCLUSION

The Motion to Compel filed by the Murphy Parties in the consolidated lead case, Case No. 15-cv-1296-SI (ECF 48), and the Motion to Quash filed by the Westerlund Parties in the Malpractice case, Case No. 3:16-cv-922 (ECF 19), are granted in part and denied in part. The parties in both cases may obtain discovery consistent with this Opinion and Order.

**IT IS SO ORDERED.**

DATED this 28th day of November, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge