# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WESTERLUND LOG HANDLERS, LLC,** *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>**MICHAEL J. ESLER,** *et al.*,<br><br>        Defendants. | Case No. 3:16-cv-922-SI<br><br>**OPINION AND ORDER** |

Judy Danelle Snyder and Holly Lloyd, LAW OFFICES OF JUDY SNYDER, 1000 SW Broadway, Suite 2400, Portland, OR 97205. Of Attorneys for Plaintiffs Westerlund Log Handlers LLC and David Westerlund.

Matthew J. Kalmanson, Gordon L. Welborn, and Jason R. Poss, HART WAGNER LLP, 1000 SW Broadway, Twentieth Floor, Portland, OR 97205. Of Attorneys for Defendants Michael J. Esler, Kim T. Buckley, and Esler Stephens & Buckley LLP.

**Michael H. Simon, District Judge.**

      Plaintiffs are Westerlund Log Handlers, LLC ("WLH") and David Westerlund ("Westerlund"). Westerlund owns 60 percent of WLH. Roger Nance ("Nance"), who originally also was a plaintiff in this lawsuit, owns the remaining 40 percent of WLH. ECF 1 at ¶ 3.[1] (WLH, Westerlund, and Nance are collectively referred to as the "Westerlund Group.")

---

[1] On August 3, 2017, the parties stipulated to Nance dismissing his claims. ECF 51.

Defendants are attorney Michael J. Esler ("Esler") and the law firm of Esler, Stephens & Buckley, LLP ("ESB"). Plaintiffs allege claims of legal malpractice and breach of fiduciary duty, premised on the alleged existence of an attorney-client relationship between Plaintiffs and Defendants. Defendants deny the existence of an attorney-client relationship with Plaintiffs. On January 29, 2018, the Court granted in part and denied in part Defendants' motion for summary judgment. ECF 90. A jury trial is scheduled to begin February 3, 2020.

Under Rules 26(a)(2)(B), 26(e), 37(b), and 37(c) of the Federal Rules of Civil Procedure, Defendants have moved to strike the following expert reports (or portions thereof) disclosed by Plaintiffs: (1) Wm. Randolph Turnbow's expert report dated January 4, 2019; (2) Michael Greene's initial expert report dated January 2, 2019 and supplemental expert report dated February 11, 2019; and (3) all references in William V. Mason II's expert report dated January 3, 2019 to an undated multi-million dollar offer supposedly made to Plaintiffs to purchase a 50 percent interest in WLH. For the reasons that follow, the Court grants the motion in part and denies it in part.

**BACKGROUND**

Westerlund and Nance formed WLH in 2009. In 2013, WLH was providing log handling services for China National Building Materials Import and Export Corporation ("CNBC"). At various timed in 2013, Nance and Westerlund met with Dennis J. Murphy, Sr. ("Murphy") and other representatives of Murphy Overseas U.S.A. Timber and Land Development, LLC and Murphy Overseas U.S.A. Holdings, LLC (collectively, "the Murphy Group").[2] During some of these meetings, Westerlund and Nance discussed with the Murphy Group the possibility of working together.

---

[2] On January 17, 2014, the Murphy Group formed Murphy Overseas USA Astoria Forest Products, LLC ("AFP").

In late December 2013, Westerlund and Nance met with members of the Murphy Group at the office of the Murphy Group's accountant, Craig Vagt. Attorney Esler attended the meeting. According to Esler, he and his law firm, ESB, represented only the Murphy Group at this meeting. The attendees discussed and reviewed several documents relating to WLH's business operation and its contracts with CNBC. According to Plaintiffs, the meeting lasted several hours, during which the Westerlund Group, on the one hand, and the Murphy Group, on the other, agreed to form a joint venture sometime in the future. The joint venture would involve the creation of a new company, ownership of which would be split between the Westerlund Group and the Murphy Group. According to Plaintiffs, the Murphy Group would own 70 percent of the new company to be formed because it would be paying all legal costs and investing money in the new venture, and the Westerlund Group would own the remaining 30 percent of the new venture.

Before the late December meeting, the Westerlund Group believed that WLH's log handling agreement with CNBC required an exclusive relationship between WLH and CNBC. (The written contract between WLH and CNBC was one of the documents reviewed and discussed at the late December meeting.) The Westerlund Group believed that WLH owed a duty to CNBC to "stick it out" during the duration of that agreement. According to Plaintiffs, however, Esler told the attendees the meeting that if the Murphy Group decided to do business with WLH, the Murphy Group could "coexist" with CNBC as a customer of WLH. Also according to Plaintiffs, Esler said that WLH could work with both CNBC and the Murphy Group. In addition, while Esler was out of the room, an officer of the Murphy Group reiterated to the Westerlund Group that "our lawyer" thinks that WLH's contract with CNBC is not exclusive.

Also at this meeting, Esler stated that the WLH agreement with CNBC was unfavorable to WLH and that before the Murphy Group and the Westerlund Group could work together on the future joint venture under discussion, WLH needed to "disentangle" itself from its contract with CNBC. There was no explicit discussion during this meeting of who Esler or the ESB law firm represented. Plaintiffs assert that they believed that Esler was representing the interests of the anticipated future joint venture that was under discussion, while also orchestrating a plan to help get WLH disentangled from CNBC to further the interests of that contemplated future partnership. According to Plaintiffs, Esler explained that he did not want a formal or written agreement regarding the anticipated joint venture prepared at this time because that might later be used by CNBC to support a claim that the Murphy Group was tortiously interfering with the business relationship between WLH and CNBC.

Between the meeting in late December and January 13, 2014, Esler drafted an agreement that ultimately became the written Log Handling Agreement ("LHA") between the Westerlund Group and the Murphy Group. The LHA was signed on January 13, 2014. The LHA expressly states:

> It is not the intent of the parties to create a partnership or joint venture hereunder and no party to this Agreement shall contend to the contrary. No party shall hold himself or itself out to any person as the agent of-the other with authority to bind the other.

LHA at ¶ 10.

At some point in January, Nance asked Esler whether Esler would be representing WLH in its dispute with CNBC. Esler told Nance that he would not, but that he would "hire someone" to represent WLH in that matter. On approximately January 12, Esler spoke with attorney Gordon Carey about representing WLH.

On January 15, 2014, WLH terminated its contract with CNBC. In late January or early February 2014, Esler contacted attorney Richard Miller about also representing WLH. According to Plaintiffs, Esler hired Miller to represent WLH as their business or transactional lawyer, while Carey would represent WLH in its dispute with CNBC. Esler told Miller that Esler represented the Murphy Group, that WLH would be Miller's client, and that the Murphy Group would pay Miller's legal bills for work done by Miller for WLH.

On February 17, Miller spoke with Carey about WLH. Carey states that he told Miller that the lawsuit regarding the CNBC contract with WLH was filed to help both the Westerlund Group and the Murphy Group become free from the limitations in the WLH contract with CNBC. In November 2014, the Murphy Group paid $2.55 million to CNBC to settle all claims by and against CNBC, including claims asserted by CNBC against WLH.

## DISCUSSION

The role of an expert is to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. In other words, an expert should "address an issue beyond the common knowledge of the average layman." *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1065 n.9 (9th Cir. 2002). An expert opinion on an ultimate issue of *fact* may be admissible. Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue."). But an expert witness may not opine about a legal conclusion, including an ultimate issue of *law*. *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). In addition, an expert witness may not instruct the jury about the applicable law. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008).

**A. Turnbow Expert Report**

Defendants argue that the entirety of the Turnbow expert report should be stricken. Defendants acknowledge that there "are some appropriate opinions in his report" that they do not

challenge, but they argue that these opinions are "so intertwined with the report's numerous flaws that the report must be stricken in its entirety." ECF 102. The Court addresses the various defects in the Turnbow report alleged by Defendants.

### 1. Partnership Discussion

Under the heading, "The 'Log Handling Agreement'/Partnership Agreement," Turnbow states:

> One preliminary factual issue deserves special mention here. Except for subjective intent, there does not appear to be any dispute about the fact that the parties were investigating, negotiating, developing, or otherwise working together on a joint venture pursuant to which CNBC would be "taken out of the picture," meaning its contract avoided, and Plaintiffs and the Murphy people would form a venture to sell, process, and ship logs from Murphy operations and perhaps others using what was then Plaintiffs' deep-water piers, equipment, employees, relationships, good will, and other assets. *I find the evidence overwhelming in supporting that conclusion and conclude, as explained below, that the contract entitled "Agreement," the parties call the "Log Handling Agreement" or "LHA," was a partnership agreement under ORS Chapter 67.*

ECF 103-1 at 3 (emphasis added).

Defendants argue that this discussion is improper because Turnbow's assertion that evidence of a joint venture is "undisputed" is false and because Turnbow cannot provide the jury with his legal conclusion that the LHA was, notwithstanding Paragraph 10, a partnership agreement under Oregon law. Plaintiffs respond that Turnbow's opinion will be supported by testimony and that this evidence forms the foundation for Turnbow's opinions on matters that require specialized knowledge. Plaintiffs, however, do not contest Defendants' argument that an expert's view on whether a written agreement constitutes a "partnership agreement" is an opinion about a legal conclusion and thus not proper testimony from an expert witness. *See In re Andersen's Estate*, 101 Or. 94, 108 (1921) (holding that whether two parties are in a partnership

PAGE 6 – OPINION AND ORDER

or an agency relationship is a "conclusion of law"). An expert witness may not provide an opinion on a conclusion of domestic law. *See Nationwide Transp. Fin.*, 523 F.3d at 1058; *United States Weitzenhoff*, 35 F.3d 1275, 1281 (9th Cir. 1993) (admitting expert testimony on "contest issues of law" instead of instructing jury was "manifestly erroneous"). Further, Turnbow's statement that "there does not appear to be any dispute" about the existence of a partnership agreement is both factually unsupported and constitutes improper vouching. *See Mata v. Oregon Health Auth.*, 739 Fed. Appx. 370, 372 (9th Cir. 2018) (holding that district court did not abuse its discretion by excluding expert testimony when expert's report "did little more than vouch for [plaintiff's] version of events"). Accordingly, this portion of Turnbow's expert report is stricken.

   **2. Existence of Attorney-Client Relationship**

Under the heading, "Defendants had an Attorney-Client Relationship with Plaintiffs and Owed them the Duties described below," Turnbow states, beginning on page 4, his opinion that the parties had formed an attorney-client relationship. ECF 103-1 at 4. Defendants object.

There was no written or formal attorney-client agreement between Plaintiffs and Defendants in this case. Nonetheless, "[t]he existence of a lawyer-client relationship may be inferred from the circumstances and the conduct of the parties and does not depend on a formal agreement." *In re Wittemyer*, 328 Or. 448, 456 (1999) (citing *In re Hassenstab*, 325 Or. 166, 172 (1997)). "[T]wo types of evidence may allow an inference that a lawyer-client relationship exists: '(1) the services performed were of the kind traditionally done professionally by lawyers, *i.e.*, legal work, and (2) the putative client intended that the relationship be created.'" *In re Conduct of Hassenstab*, 325 Or. 166, 172-73 (1997) (quoting *In re Weidner*, 310 Or. 757, 768 (1990)).

Defendants make several arguments for why Turnbow's opinion concerning the existence of an attorney-client relationship should be stricken. Turnbow states in his report: "In general,

PAGE 7 – OPINION AND ORDER

the facts lead me to conclude that *Plaintiffs reasonably relied* upon an assumption or belief that Mr. Esler was acting to further the interests of all parties by furthering the interests of the to be formalized (and by the time of the LHA already existing) venture." ECF 103-1 at 4. Defendants argue that this statement is improper because it "constitutes improper vouching for plaintiffs' purported beliefs." *See Mata*, 739 Fed.Appx. at 372. The Court agrees. Turnbow is merely vouching for the asserted beliefs of Plaintiffs rather than properly "address[ing] an issue beyond the common knowledge of the average layman." *Mukhtar*, 299 F.3d at 1065 n.9 (9th Cir. 2002). Turnbow's opinion that Plaintiffs reasonably relied on an assumption or belief that Esler was acting to further the interests of all parties is stricken.

Defendants also argue that Turbow's statement that the evidence supporting his opinion on this point is "far too voluminous to list" (ECF 103-1 at 5) should be stricken because an expert is required to provide "the facts or data considered by the witness" in forming his opinions. Fed. R. Civ. P. 26(a)(2)(B). Plaintiffs respond that Turnbow states at the beginning of the report the "Facts and Evidence Replied Upon:"

> I have reviewed all of the materials you provided to me listed below, some several times. I have paid particular attention to Judge Simon's opinion and order on Defendants' motion for summary judgment for an explanation of the relevant issues, the basic facts and circumstances here as asserted by both parties, and Judge Simon's analysis. I accept Judge Simon's statement, descriptions of the evidence and findings as accurate.

ECF 103-4. Turnbow then lists the materials he considered. Turnbow, therefore, has provided "the facts or data considered by the witness" in forming his opinions. Fed. R. Civ. P. 26(a)(2)(B). The statement that the evidence supporting Turnbow's opinion is "far too voluminous to list" is better understood in context as a statement about how many pieces of evidence in those listed materials Turnbow understood to support the conclusion that "Plaintiffs reasonably relied upon an assumption or belief that Mr. Esler was acting to further the interests of all parties by

furthering the interests of the . . . venture." ECF 103-1 at 4-5. Nevertheless, as stated above, such a conclusion is improper vouching and is stricken. Thus, whether Turnbow need be more specific in his citation to evidence is moot.

Plaintiffs concede that Turnbow's statement in the first full paragraph on page five regarding the legal sophistication of "people in the timber industry" should be stricken. Further, the Court agrees with Defendants that the second full paragraph on the same page should be stricken, as it describes the ethical rules applicable in the case of an attorney-client relationship, and such a statement is likely to confuse a jury rather than help the trier of fact understand evidence in this case. The jury must determine whether an attorney-client relationship existsed, not whether the Defendants violated any ethical rules. Plaintiffs appear to agree: "The jury will need to determine if an attorney-client relationship existed between Plaintiffs and Defendants." ECF 104 at 5. Plaintiffs' argument that description of the ethical rules is appropriate "to serve as a juxtaposition to the conduct of Defendants" is unpersuasive, as such a juxtaposition is more likely to confuse rather than assist a finder of fact. It is stricken.

The Court, however, disagrees with Defendants' argument that paragraphs three and four on page 5 of Turnbow's opinion should be stricken. In those paragraphs, Turnbow states:

> 3. Lawyers are very expensive, and it makes good business sense to use only one lawyer if two or more are unnecessary. That is particularly the case if the one lawyer appears to be particularly knowledgeable in the industry or business, highly qualified, and willing to engage additional lawyers for specialized tasks such as bringing litigation.
>
> 4. Having one lawyer advise on how to set up a business venture or transaction, and even draft the controlling documents, is not uncommon in the business world, particularly between people who know and trust each other. I have done it many times, particularly when I was a General Counsel.

ECF 103-1 at 5. These facts may be unknown to people who do not generally retain the services of a lawyer. Also, the fact that Turnbow himself has advised multiple parties on how to set up a business venture is merely part of his relevant background. These two paragraphs are not stricken.

Defendants also challenge Turnbow's statements in paragraphs five and six. In those paragraphs, Turnbow states:

> 5. The actions in dispute occurred early in the venture negotiations or implementation before at least most issues with significant conflicts obvious to a layperson arose.
>
> 6. Defendants specific advice and actions relating to attempting to avoid an apparently less favorable contract with CNBC with a termination, negotiations, and possible litigation paid for by the Murphys present conflicts of interest obvious to a lawyer, but not to a layperson, particularly when they are recommended by an attorney.

ECF 103-1 at 5. Paragraph five is not helpful to a trier of fact, and paragraph six offers a legal conclusion, namely that there was a conflict of interest. These two paragraphs are stricken.

In paragraph eight, Turnbow states:

> 8. As is discussed above, *the LHA and prior discussions made the Plaintiffs partners with at least Murphy Overseas USA Astoria Forest Products, LLC.* Partners should be able to trust partners and it is generally reasonable to do so.

ECF 103-1 at 8. For the same reasons discussed above, Turnbow may not tell the jury that in his opinion the LHA and prior discussions made the Plaintiffs "partners" with AFP. Paragraph eight is stricken.

### 3. Standard of Care

Turnbow's report also contains a section titled "Standard of Care." ECF 103-1 at 7. Although it may be appropriate for an expert attorney to explain the standard of care that an attorney owes a client, Turnbow's report goes beyond what is appropriate. He states: "To the

extent Defendants did not effectively disclaim representation of Plaintiffs, Defendants owed two types of duties to them." ECF 103-1 at 7. In the context of prefacing his description of an attorney's standard of care, Turnbow is essentially presenting his opinion that an attorney-client relationship exists unless Defendants "effectively disclaimed" any legal representation of Plaintiffs. That is stricken.

### 4. Breach of Duty

The Court also agrees with Defendants that there are improper statements in Turnbow's report under the section entitled, "Defendants B[r]eached their Duties." ECF 103-1 at 9. This section does not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The occurrence of a breach of a duty is a conclusion of law. Turnbow's opinion that "Defendants obviously breached the duties imposed by RPC 1.7" is stricken.

In sum, the Court agrees with Defendants' arguments for why many portions of the Turnbow report should be stricken. Defendants do not, however, cite legal authority for the proposition that when improper opinions are "pervasive" in a report, the entire report must be stricken, especially when Defendants admit that some opinions in the report are appropriate. The Court, therefore, will allow Turnbow to provide an amended report consistent with this Opinion and Order within 28 days, and Defendants may file a further motion against Turnbow's amended report, if appropriate.

## B. Greene Expert Report and Supplemental Expert Report

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires that an expert report disclose "the facts or data considered by the witness in forming them." Michael Greene's original expert report was submitted to Defendants on January 7, 2019, and Defendants assert that the report was deficient insofar as it did not adequately disclose the facts considered by Greene. Defendants acknowledge that the original report stated that the "Facts, Basis and

Reasons for Opinions" included "reviewing pleadings, summary judgment briefs, depositions, deposition exhibits, lawyer Carey files and Cosgrave law firm files." ECF 103-2. Defendants contend, however, that Greene's three-paragraph disclosure was deficiently brief and nonspecific.

The parties conferred regarding this purported deficiency, and Plaintiffs expressed a willingness to supplement Green's report to provide the absent factual bases. Plaintiffs disclosed Greene's supplemental report on February 12, 2019. Defendants do not argue that the supplemental report did not cure the purported factual deficiencies, but instead that the supplemental report "was not prepared in response to new information" and was disclosed "on the eve of Defendants' expert disclosure deadline and the close of discovery." Defendants base their argument in part on *Hologram USA, Inc. v. Pulse Evolution Corp.*, 2016 WL 3965190, at *3 (D. Nev. July 21, 2016), in which the district court excluded a supplemental expert report that was disclosed "on the twilight of the discovery period."

As Plaintiffs correctly assert, however, *Hologram* is distinguishable. In that case the "initial report completely omit[ed] discussion of the central device" at issue. *Id.* The district court therefore held that the supplemental report, which included a description of the device, was an attempt to "revise their disclosures in light of their opponents' challenges" and would be prejudicial to defendants. *Id.* There is no such prejudice to the Defendants in this case. The supplemental report offered by Greene is not an attempt to "revise [his] disclosures in light of [his] opponent's challenges to the analysis and conclusions therein," which the Ninth Circuit has made clear is prohibited under Rule 26(e) of the Federal Rules of Civil Procedure. *Luke v. Family Care and Urgent Medical Clinics*, 323 Fed. Appx. 496, 500 (9th Cir. 2009). Instead, the supplemental report does not revise; it merely expounds on the purportedly brief and inadequate

factual bases for the report that Defendants asserted were missing from the original report. The motion to strike the supplemental Greene report is denied, although Defendants have leave to take any further deposition of Greene limited to the material added in his supplemental report.

## C. Mason Expert Report

Defendants raise only one objection to the Mason expert report. Defendants object to a reference in that report to a purported offer of three to five million dollars that Plaintiffs supposedly received from A1 Timber for a 50 percent interest in Plaintiffs' business. Mason relies on this offer as support for his business valuation. Defendants argue that Nance failed to disclose this purported offer in his deposition taken on June 13, 2017, while he was still a plaintiff in this lawsuit. According to Defendants, Nance failed to disclose the purported offer in his deposition when he gave the following answers to the following questions:

> Q. Were you aware of another entity out there that was looking to potentially assist you with your financial problem?
>
> A. We're going backwards to 2012.
>
> Q. Was that M&R?
>
> A. M&R –

ECF 103-8 at 4.

Defendants argue that Plaintiffs have failed to provide discovery relating to the purported offer from A1 Timber and, therefore, the Court should prohibit Plaintiffs from introducing or otherwise benefitting from the withheld discovery. The question to Nance, however, was not sufficiently precise to warrant a finding that Plaintiffs deliberately withheld evidence.

In the alternative, Defendants argue that the purported offer from A1 Timber is not reliable under Fed. R. Evid. 702 and should be stricken. "It is the proponent of the expert who has the burden of proving admissibility." *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598

(9th Cir. 1996). Admissibility of the expert's proposed testimony must be established by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10 (*citing Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)). Plaintiffs assert that the existence of the multi-million dollar offer from A1 Timber was "information Mr. Mason learned while preparing his report."

The Ninth Circuit has discussed the standard for reliability that a district court should consider when determining whether expert testimony is admissible. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014). As explained by the Ninth Circuit:

> The test of reliability is flexible. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc). The court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance. *Id.; see also Primiano*, 598 F.3d at 564. But these factors are "meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano*, 598 F.3d at 564 (citations and quotation marks omitted); *see also Barabin*, 740 F.3d at 463. The test "is not the correctness of the expert's conclusions but the soundness of his methodology," and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony. *Primiano*, 598 F.3d at 564-65. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury.

*Id.* at 1043-44 (case citation alterations added, remaining alterations in original).

As Plaintiffs correctly state, the reliability of Plaintiffs' evidence may be tested at a Rule 104 hearing before the expert testifies. It is not appropriate at this time to strike Mason's reliance on and reference to the purported evidence of an offer from A1 Timber. If Defendants seek to challenge the admissibility of the purported offer from A1 Timber before trial or to challenge whether that evidence is of the sort reasonably relied upon by an expert, Defendants have leave to file a motion under Rule 104 and request an evidentiary hearing.

## CONCLUSION

Defendants' Motion to Strike (ECF 102) is GRANTED in part and DENIED in part as stated in this Order.

**IT IS SO ORDERED.**

DATED this 24th day of June, 2019.

<u>/s/ *Michael H. Simon*</u>
Michael H. Simon
United States District Judge